## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 17 2016, 7:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Kenneth W. Kee,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

November 17, 2016

Court of Appeals Case No.
22A05-1512-CR-2151

Appeal from the Floyd Superior Court

The Honorable Maria D. Granger, Judge

Trial Court Cause No.
22D03-1503-F4-496

**Mathias, Judge.**

Kenneth Kee was convicted in Floyd Superior Court of two counts of Level 4 dealing in methamphetamine. He was also adjudicated a habitual offender. Kee appeals his conviction and raises three issues, which we restate as:

I. Whether Kee's right to a speedy trial was violated;

II. Whether Kee was prejudiced when a police officer was allowed to testify that he knew Kee prior to his arrest because of other narcotic investigations; and

III. Whether the State presented sufficient evidence to prove the weight of the methamphetamine.

We affirm.

## Facts and Procedural History

In February 2015, Devan Philpott ("Philpott") was arrested for possession of methamphetamine by the Clarksville Police Department. Philpott asked to become a confidential informant, and he was released from custody. On February 23, 2015, he was interviewed by Indiana State Police Detective Barry Brown ("Detective Brown"). Philpott identified Kee as his dealer, and Detective Brown arranged a controlled buy between Philpott and Kee.

Philpott and Kee agreed to meet at a Meijer store in New Albany. Philpott was given $500 in buy money and told to make the exchange in the Meijer parking lot. Philpott's person and vehicle were searched, and he was equipped with a recording device.

[4]     When Kee arrived, Philpott went inside the Meijer store with him. Eventually, they went into a store bathroom where Kee left two baggies of methamphetamine in a stall. Philpott retrieved the baggies as directed. He then gave Kee $500: $240 for the two baggies of methamphetamine and $260 for a prior debt.

[5]     Next, Kee instructed Philpott to meet him at a gas station in New Albany where he would give him more methamphetamine. At the gas station, Kee threw another baggie into Phipott's vehicle. Later testing revealed that the combined weight of the three baggies of methamphetamine was 1.94 grams.

[6]     Law enforcement officers arranged a second controlled buy on February 27, 2015. Once again, before the buy, the officers searched Philpott's person and vehicle. Philpott was given $260, and he was equipped with a recording device. This time, Philpott met Kee in the driveway of Kee's residence. Kee gave Philpott three baggies containing methamphetamine in exchange for $260. Later testing revealed the baggies contained a total of 1.59 grams of methamphetamine.

[7]     Kee was subsequently charged with two counts of Level 4 felony dealing in methamphetamine. The State also alleged that Kee was a habitual offender. Kee filed a speedy trial request, which was granted and trial was set for May 26, 2015. The State later requested a continuance under Criminal Rule 4(D) and argued that certain evidence from the State Police Lab could not be obtained before the trial date. Kee objected to the continuance. After a hearing was held

on the motion, the trial court granted the motion and continued the trial to August 25, 2015.

[8] Prior to trial, Kee again filed a motion for discharge arguing that he had been denied his right to a speedy trial. The court denied the motion, and Kee's four-day jury trial commenced on August 25, 2015. He was found guilty as charged on the dealing counts. On August 31, 2015, the habitual offender phase of trial was held, and the jury determined that Kee was a habitual offender. At the sentencing hearing held on November 6, 2015, the trial court ordered Kee to serve an aggregate twenty-year sentence. Kee now appeals. Additional facts will be provided as necessary.

## I. Speedy Trial

[9] Kee moved for a speedy trial pursuant to Criminal Rule 4(B). This rule provides in relevant part that:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

Ind. Crim. R. 4(B).

[10] However, Criminal Rule 4(D) permits the State to request a continuance of the 70-day rule. Specifically, Criminal Rule 4(D) provides that a trial court may

grant the State a continuance when it is satisfied that: (1) there is evidence for the State that cannot then be had, (2) reasonable effort has been made by the State to procure the evidence, and (3) there is just ground to believe that such evidence can be had within ninety days. *Chambers v. State*, 848 N.E.2d 298, 303-04 (Ind. Ct. App. 2006). Any exigent circumstances may warrant a reasonable delay beyond the limitations of Criminal Rule 4. *Id*. at 304. The reasonableness of such delay should be judged in the context of the particular case, and the decision of the trial judge will not be disturbed except for an abuse of discretion. *Id*. "'Rule 4(D) does not mandate the evidence be essential or unique, only that it be unavailable and that the State be entitled to present it.'" *Wilhelmus v. State*, 824 N.E.2d 405, 413 (Ind. Ct. App. 2005) (quoting *Smith v. State*, 502 N.E.2d 485, 488 (Ind. 1987)). The purpose of Criminal Rule 4(B) is to assure criminal defendants speedy trials, not to provide them with a technical means of avoiding trial. *Id*. at 412.

[11] The State requested a continuance of the May 2015 trial date because the Indiana State Police Laboratory wanted additional DNA samples from the possible participants of the controlled buy to conduct further analysis of the baggies. The State was attempting to obtain the additional, requested DNA samples when it filed its May 8 motion to continue the May 26 trial date. The State also stated that the State Police Lab would need additional time to conduct its DNA analysis. The State hoped the evidence would establish that Kee handled the baggies because the video evidence did not establish that he actually possessed them. Tr. p. 21.

It was within the trial court's discretion to determine whether the State had attempted to procure the evidence at issue but had not been able to do because of time constraints. The State Police Lab was unable to perform the requested analysis without additional DNA samples that the State needed time to procure. The State Police Lab performed the additional analysis once the samples were obtained. The State established that it did not have an opportunity to obtain the evidence within the parameters established by Criminal Rule 4(B). For these reasons, we conclude that the trial court properly continued Kee's trial pursuant to Criminal Rule 4(D).

## II. Character Evidence

Next, we address Kee's claims that he was denied a fair trial because Detective Brown testified that Kee was known to law enforcement officers prior to the events that occurred in this case. Specifically, during Kee's re-cross examination of Detective Brown, Kee referenced the detective's earlier testimony that he was familiar with Kee before Philpott asked to be a confidential informant.

> KEE: [H]ow did you become familiar with Kenny?
>
> DETECTIVE: I knew him before. Once . . . the CI told me his name, I can go into that if you wish.
>
> KEE: I would like that because you said earlier that you didn't know anything about Kenny but . . . the confidential informant brought him to you.

> DETECTIVE: I knew who Kenny Kee was . . . from past, uh, knowing other narcotics officers and their dealings with Mr. Kee, that's how I was familiar with him.
>
> KEE: But you never tried to arrest him in the past?
>
> DETECTIVE: No, I did not.

Tr. pp. 457-58.

[14] After Detective Brown's testimony, Kee asked for a mistrial. The State argued that Kee was not entitled to a mistrial because he elicited the testimony. The trial court denied the motion for a mistrial but did admonish the jury that the jurors should not consider Detective Brown's testimony concerning how he knew Kee and struck the testimony from the record. Tr. pp. 463-64.

[15] It is well-settled that a defendant may "open the door" to the admission of evidence otherwise inadmissible under the rules of evidence. *See Jackson v. State*, 728 N.E.2d 147, 152 (Ind. 2000). Grounded in estoppel, the doctrine of invited error provides "a party may not take advantage of an error that she commits, invites, or which is the natural consequence of her own neglect or misconduct." *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005). In other words, "[d]efendants cannot complain of errors that they induced the trial court to make; a party may not invite error and then rely on such error as a reason for reversal, because error invited by the complaining party is not reversible error." *Berry v. State*, 574 N.E.2d 960, 963 (Ind. Ct. App. 1991), *trans. denied*; *see also Cole v. State*, 970

N.E.2d 779, 783 (Ind. Ct. App. 2012) (stating that we will not reverse a conviction on the basis of invited error).

[16] Kee invited error by eliciting the testimony at issue, and then requested a mistrial after he introduced the error into the proceedings. The trial court appropriately denied Kee's motion. Also, recognizing the potentially prejudicial nature of the detective's testimony, the trial court admonished the jury and struck the testimony from the record.[1] A timely and accurate admonition is presumed to cure any error in the admission of evidence. *Banks v. State*, 761 N.E.2d 403, 405 (Ind. 2002).

[17] Kee also failed to object to Detective Brown's testimony during direct examination that he was familiar with Kee. Tr. pp. 134, 292, 302. Specifically, Detective Brown stated that when Philpott approached him about becoming a confidential informant, Philpott "mentioned the name Kenneth Kee, who I was familiar with" and that he was "familiar with Mr. Kee prior to the drug transaction." Tr. pp. 134, 292. Because Kee failed to object to these statements, he did not preserve this issue for appeal. However, a claim waived by a defendant's failure to object can be reviewed on appeal under the fundamental error doctrine. *See Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010).

---

[1] When the court admonished the jury, it mistakenly referred to Detective Brown's testimony concerning how he knew "Philpott." The reference to Philpott was a simple misstatement, and in the context in which the admonition was given, we are confident the jury knew the trial court meant to refer to Kee.

[18] "Fundamental error is an extremely narrow exception to the waiver rule where the defendant faces the heavy burden of showing that the alleged errors are so prejudicial to the defendant's rights as to make a fair trial impossible." *Ryan v. State*, 9 N.E.3d 663, 668 (Ind. 2014) (citation and internal quotation marks omitted). The error must be "so egregious and abhorrent to fundamental due process" that the trial judge should have acted, "irrespective of the parties' failure to object or otherwise preserve the error for appeal." *Whiting v. State*, 969 N.E.2d 24, 34 (Ind. 2012).

[19] Detective Brown's vague testimony that he was familiar with Kee did not prejudice Kee to the extent to deny him a fair trial, particularly when this testimony is considered against the weight of the evidence that Kee committed dealing in methamphetamine. For all of these reasons, we conclude that Kee has not established reversible error concerning Detective Brown's challenged testimony that he knew Kee prior to the commission of these offenses.

### III. Weight of the Methamphetamine

[20] Finally, Kee argues that the State failed to present sufficient evidence that Kee committing dealing in methamphetamine weighing at least one gram but less than five grams because the State failed to prove that the scale used to weigh the drug was tested for accuracy. When reviewing the sufficiency of the evidence to support a conviction, appellate courts are "markedly deferential to the outcome below." *Bowman v. State*, 51 N.E.3d 1174, 1181 (Ind. 2016). Our court neither reweighs the evidence nor judges the credibility of the witnesses, and we consider only the evidence most favorable to the verdict and the reasonable

inferences that can be drawn from this evidence. *Knight v. State*, 42 N.E.3d 990, 993 (Ind. Ct. App. 2015). We will not disturb the jury's verdict if substantial evidence of probative value supports it. *Id.* As an appellate court, we respect the jury's exclusive province to weigh conflicting evidence. *Id.*

[21] Although the State bears the burden to establish that the scale used to measure the weight of the methamphetamine was properly calibrated, the accuracy of the scale used to weigh the methamphetamine is foundational evidence. *See Turner v. State*, 878 N.E.2d 286, 294 (Ind. Ct. App. 2007), *trans. denied*; *Guadian v. State*, 743 N.E.2d 1251. 1255 (Ind. Ct. App. 2001), *trans. denied* (explaining "in other words, the scale's accuracy is foundational evidence; it is not an element of the crime").

[22] "When the foundation for the admission of evidence is at issue, this court has determined that before the prosecution has any responsibility to establish the foundation, the defense must object that the prosecution has not laid the proper foundation." *Turner*, 878 N.E.2d at 294.

> "[A] defendant may not sit idly by while error is committed and later take advantage of it, where a proper objection made at trial could have corrected the error. . . .  Had objection been made to the lack of a proper foundation in this case, such foundation could then have been supplied."

*Guadian,* 743 N.E.2d at 1254 (quoting *Mullins v. State*, 646 N.E.2d 40, 48 (Ind. 1995)).

[23] Because Kee failed to object to admission of the evidence establishing the weight of the methamphetamine, the trial court properly admitted the evidence even though the State failed to elicit testimony about the calibration of the scale. *See Turner*, 878 N.E.2d at 294.

[24] The weight of the methamphetamine at issue in this case is important because Kee was charged with two counts of Level 4 felony dealing in methamphetamine in a weight between one gram but less than five grams. *See* Ind. Code 35-48-4-1.1; Appellant's App. pp. 27. The weight of the baggies was 1.94 grams of methamphetamine and 1.59 grams of methamphetamine, respectively.

[25] The weight of the methamphetamine would not have been readily apparent to the jury, and specifically that the weight was between one gram and five grams. Therefore, the only evidence to establish the weight of the methamphetamine was the testimony and certificate of analysis admitted during the State Police's forensic scientist's testimony. However, Kee only speculates that the weight of the methamphetamine might not have been at least one gram. Also, the forensic scientist, who has over thirty years of experience, explained how the methamphetamine was weighed. Tr. pp. 577-82. For these reasons, we conclude that the jury could reasonably infer that the State presented sufficient evidence to prove that the weight of the methamphetamine for both offenses was over one gram.

## Conclusion

Kee has not established any reversible error concerning his right to a speedy trial, Detective Brown's testimony, and his claim that the State failed to prove the weight of the methamphetamine at issue. We therefore affirm his two Level 4 felony dealing in methamphetamine convictions.

Affirmed.

Robb, J., and Brown, J., concur.